**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| ADAM WAGNER, on behalf of himself and others similarly situated, | : | CIVIL ACTION FILE NO. 1:25-cv-01376 |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT – CLASS ACTION** |
| v. | : | |
| | : | |
| ATRIUM MANAGEMENT COMPANY, LLC d/b/a ATRIUM PROPERTY MANAGEMENT | : | **JURY TRIAL DEMANDED** |
| | : | |
| AND | : | |
| | : | |
| REALPAGE, INC. | : | |
| | : | |
| Defendants. | : | |

Plaintiff Adam Wagner (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Atrium Management Company, LLC d/b/a Atrium Property Management

("Atrium"), by and through its agent RealPage, Inc., violated the TCPA by sending multiple prerecorded calls to Plaintiff and other putative class members listed,

3. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal calls.

4. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

5. Plaintiff Adam Wagner is an individual residing in the Eastern District of Virginia.

6. Defendant Atrium Management Company, LLC is a limited liability company that is headquartered and has its principal place of business in Florida, as well as owns and operates a rental complex, Gerwyn Manor Townhomes, in Sandston, VA.

7. Defendant RealPage, Inc. is a technology company hired by Atrium to make prerecorded calls on its behalf and has its headquarters and principal place of business in Texas.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9. This Court has general personal jurisdiction over Atrium because it owns property in this District. This court has specific personal jurisdiction over RealPage because it contracted with Atrium in a contract that, among other things, and upon information and belief, provided for the provision of illegal calling conduct into Virginia, including on behalf of Atrium for the Virginia property it owns and manages.

2

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the calls at issue were directed into this District, including a telephone number with an 804- area code associated with this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

The TCPA Prohibits Prerecorded Calls to Cell Phones

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.    Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

16.    This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

17.    "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

18.    Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A)

prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

## FACTUAL ALLEGATIONS

19. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20. Plaintiff Wagner's telephone number, (804) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

21. Plaintiff Wagner uses the telephone number for his own personal, residential, and household needs and reasons.

22. Plaintiff Wagner does not use the number for business reasons or business use.

23. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

24. The number is assigned to a residential cellular telephone service.

25. Despite that, Mr. Wagner received hundreds of violative prerecorded calls from Defendant RealPage, Inc., sent on behalf of and for the benefit of Defendant Atrium Management Company, LLC d/b/a Atrium Property Management.

26. The calls all came from the caller ID 833-587-1060.

27. All of these calls were placed with identical prerecorded messages. When Plaintiff answered, the call began with an automated voice stating: "And note, this call may be recorded for business purposes. This is an emergency maintenance call for Gerwyn Manor Apartments. Press or say 1 to accept or press or say 2 to reject."

28. These calls were "wrong number" calls.

5

29. On multiple occasions, after Plaintiff did not respond, a second automated voice would state: "That was an improper response," after which the original message would repeat in full.

30. If there was still no response from Plaintiff, a third automated voice would play stating that the call was ending. The call would then disconnect.

31. The Plaintiff previously worked for Defendant Atrium, but has since ceased to be employed by them.

32. The Plaintiff attempted to get the calls to stop by reaching out to Atrium, who in turn also went into the RealPage system, and attempted to remove the number, but the Plaintiff continued to receive calls.

33. Rejecting the calls does not stop them, either.

34. The calls were not necessitated by any emergency, let alone any emergency applicable to the Plaintiff or other class members.

35. Defendant Atrium ratified RealPage's conduct by continuing to work with RealPage, despite being on notice of the illegal telemarketing conduct, and authorizing RealPage to continue contacting the Plaintiff, including after the Plaintiff requested that the calls stop.

36. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

37. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

6

38.     The FCC has instructed that companies such as Atrium may not avoid liability by outsourcing automated calling to agents, such as RealPage, and nor can companies like Atrium cannot avoid liability by outsourcing property management or calling services out to any additional third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

39.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone conduct "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

40.     Atrium is liable for calls placed by RealPage and any subvendors they may have hired and which were ultimately placed with Atrium's property name and using a prerecorded voice naming the same.

41.     Atrium uses technology companies like RealPage who it authorizes to make phone calls using prerecorded messages as part of its property management activities.

42.     Atrium controlled the day-to-day activities of RealPage by allowing them to send the illegal prerecorded calls at issue.

43.     Atrium also could have prohibited RealPage from sending such messages.

44. They did not.

45. Finally, Atrium could have terminated RealPage once it learned of RealPage's illegal calling conduct.

46. It did not.

47. A company seller like Atrium or a reasonable technology company like RealPage would investigate why it was relentlessly calling individuals like Plaintiff with prerecorded messages, let alone why calls were continued to be made after being asked to stop.

48. Moreover, a reasonable company would also investigate into the reasons why their agents would be calling numbers using prerecorded messages, including to wrong numbers.

49. They did not.

50. Atrium hired RealPage without a proper investigation and did not terminate them when they were informed of RealPage's illegal calling conduct.

51. As such, Atrium knowingly ratified RealPage's conduct.

52. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

53. Plaintiff never consented to receive calls from Defendants.

54. In fact, as described above, the Plaintiff explicitly revoked any purported consent to receive calls from the Defendants, but the calls continued.

55. The calls were all placed using prerecorded, robotic voices.

56.     Plaintiff's privacy has been violated by the above-described calls.

57.     The Plaintiff never provided his consent or requested the calls.

58.     The aforementioned calls to the Plaintiff were unwanted.

59.     The calls were non-consensual encounters.

60.     The Defendants had the ability to immediately honor Plaintiff's do not call requests, but they did not. Instead, they continued to harass the Plaintiff.

61.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## **CLASS ACTION ALLEGATIONS**

62.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

63.     Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

64.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **RealPage Robocall Class**: Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) RealPage, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.
>
> > **Atrium Robocall Sub-Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) RealPage, or a third party on their behalf, placed a call using artificial or pre-record messages (3) that referenced an Atrium property, (4) within the four years prior to the filing of the Complaint.

9

65. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the class.

66. Excluded from the Class are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

67. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

68. This Class Action Complaint seeks injunctive relief and money damages.

69. The Class, as defined above, is identifiable through Defendants' dialer records, other phone records, and phone number databases.

70. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion.

71. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

72. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

73. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

74.     There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

    a.  Whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class and Sub-Class;

    b.  Whether Defendants' conduct constitutes a violation of the TCPA; and

    c.  Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

75.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class because the Plaintiff has no interests which are antagonistic to any member of the Class.

76.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

77.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

78.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

### Statutory Violations of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(b)) on behalf of the Robocall Class

79.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

80.    The Defendants violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

81.    As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

82.    The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

83.    Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

12

B.    That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.    Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: August 20, 2025                PLAINTIFF, on behalf of himself
                                      and others similarly situated,


                                      */s/ William Robinson*
                                      William Robinson
                                      VSB:76098
                                      319 N. Piedmont St., #1
                                      Arlington VA. 22203
                                      ph. 703-789-4800
                                      wprlegal@gmail.com